THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Roniah Trotter*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Roniah Trotter, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, an Arizona municipal corporation; Chelsey Rios, in her individual capacity; Reginald Crawford, in his individual capacity; Brendon Bryce, in his individual capacity;<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

For her Complaint against Defendants City of Phoenix, Chelsey Rios, Reginald Crawford, and Brendon Bryce, Plaintiff Roniah Trotter through undersigned counsel, hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. In June of 2016, the City of Phoenix implemented a ban prohibiting pet owners from taking their dogs on a walk on any City hiking trail when temperatures reach over 100 degrees Fahrenheit.

2. Enacted to prevent serious injuries to pets – including burns to dog's feet

caused by the notoriously high temperature of the ground in the Phoenix summer – the City's new regulation made it a class one misdemeanor, punishable by a $2,500 fine and six months in jail, for people to bring their dogs for hikes on days where the temperature exceeds 100 degrees. Indeed, on the City of Phoenix's official website, there is a specific page dedicated to *Pet Safety* warning pet owners that "[s]ummertime heat poses a significant threat the family dog. When walking or playing on hot asphalt during summer months, the dog's feet may become burned."[1]

3. In a City that views hot ground as such a threat to animal welfare that it deems fit to criminalize it, it would be reasonable to expect police officers would use caution in arresting human beings on those same hot surfaces. Yet this is a case about City of Phoenix Police Officers pressing a 17-year-old girl onto a hot concrete sidewalk, in the middle of the afternoon of a record-breaking August heatwave, until she suffered second-degree burns to her arms.

## **PARTIES**

4. Plaintiff Roniah Trotter is currently an 18-year-old high school senior residing in Maricopa County, Arizona.

5. Defendant Chelsey Rios is a police officer with the City of Phoenix Police Department. Upon information and belief, she resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Chelsey Rios was acting under the color of law, in furtherance of the interests of the City of Phoenix, and within the course and scope of her employment. She is being sued in her individual capacity under 42 U.S.C. § 1983.

6. Defendant Reginald Crawford is a police officer with the City of Phoenix Police Department. Upon information and belief, he resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Reginald Crawford was acting under the color of law, in furtherance of the interests of the City of Phoenix, and within the course

---

[1] *See* https://www.phoenix.gov/fire/safety-information/general-safety/pet

and scope of his employment. He is being sued in his individual capacity under 42 U.S.C. § 1983.

7. Defendant Brendon Bryce is a police officer with the City of Phoenix Police Department. Upon information and belief, he resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Brendon Bryce was acting under the color of law, in furtherance of the interests of the City of Phoenix, and within the course and scope of his employment. He is being sued in his individual capacity under 42 U.S.C. § 1983.

8. Upon information and belief, there are currently unknown City of Phoenix employees and other personnel who caused or contributed to Plaintiff's injuries. The identity and roles of these individuals are uniquely within the possession of the City of Phoenix and Plaintiff will amend her complaint to add such responsible individuals upon discovery of their identities.

9. Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona. The City maintains and operates a law enforcement agency known as the City of Phoenix Police Department.

10. The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

11. The City has established or delegated to its law enforcement agency the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.

12. Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of

America, the State of Arizona, and the City of Phoenix, by their authority as sworn officers, and within the course and scope of their employment.

13. For Plaintiff's state law claims, but not for her claims under section 1983, the City is responsible for the wrongful acts or omissions of its employees under the doctrine of *respondeat superior*.

## JURISDICTION, AND VENUE

14. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of her civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

16. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

## GENERAL ALLEGATIONS

### The Bus Ride & After-School Altercation

17. On August 20, 2019, Phoenix was in the midst of an historic heat wave. That day, the mid-day temperature soared to 113 degrees, breaking a 33-year-old record.[2]

18. In light of the record heat, the National Weather Service issued an excessive heat warning that day, cautioning individuals in Phoenix to avoid outdoor activities—and identifying most of the City as facing a level of heat that was "rare, dangerous, and deadly."[3]

---

[2] *See* https://www.azcentral.com/story/news/local/phoenix-weather/2019/08/20/phoenix-forecast-city-could-break-heat-record-august-record-high-temperature/2032798001/

[3] *Id.*

- 4 -

19. After completing her school day at South Pointe High School, Roniah began her journey home, boarding the westbound Metro bus at the Central Avenue and Baseline Road bus stop. Inside, she found a seat to herself and prepared for the ride.

20. Roniah's peace was interrupted when one of her classmates began to engage and taunt her.

21. The two exchanged verbal barbs and their disagreement eventually escalated into shouts.

22. Because of the commotion, the driver stopped the bus, called dispatch, and required the students to exit.

23. Once outside the bus, the altercation between Roniah and the other teenage girl continued as more classmates circled around.

24. Yelling at each other, and being egged on by their peers to fight, the girl hit Roniah in the face; Roniah defended herself and hit her back.

25. Neither Roniah nor the other girl were armed with any weapons, and neither landed clean blows.

26. Like most adolescent, after-school fights, the altercation was short and mostly harmless: The girls quickly tired themselves out in the 113-degree heat and the fight ended without anyone being seriously physically injured.

27. When it was over, the girls' peers milled around the bus stop, waiting in the heat for the next bus to arrive so they could board it and continue their trip home.

28. Phoenix Police arrived before the next bus did.

## Phoenix PD's Excessive Use of Force

29. When police arrived at the bus stop, the two girls were already separated and remained so as police completed witness interviews.

30. After concluding the interviews, Officer Crawford moved to arrest Roniah, grabbing her from behind.

31. Roniah, who is approximately 5 feet, 4 inches tall and weighs about and 130 pounds, was confused about what was happening and grew scared and anxious at the unexpected show of force.

32. She instinctually recoiled when Officer Crawford grabbed her.

33. In response, Officer Crawford lifted Roniah, causing her feet to lift off the ground before he slammed her to the concrete sidewalk.

34. With Roniah on the ground, Officers Rios and Bryce quickly came to assist, helping pin Roniah face-down on the hot concrete.

35. At the time, Roniah was wearing a sleeveless shirt and she cried out in agony as her bare forearms instantly began to burn.

36. Feeling as if she was being burned alive, Roniah's body reacted reflexively, and she writhed and twisted in pain.

37. The officers responded by continuing to hold her to the ground.

38. Eventually, the officers relented, handcuffed Roniah, and removed her from the sidewalk—chunks of melted skin peeling off her body as they did so.

39. The officers called medical personnel to the scene, who wrapped Roniah's burned arms in gauze.

40. The officers then caused Roniah to be restrained, placed her into the back of a police vehicle and transported to a police precinct – where she was interviewed, without her mother present, before they decided to book her into jail on four counts of assaulting an officer and resisting arrest.

### Roniah Is Admitted Into an Emergency Burn Unit

41. Roniah sat in jail, in pain, for almost 24 hours before her release.

42. When she was finally released, her mother immediately brought her to Valley Health's emergency burn unit, where she was diagnosed with second-degree (partial thickness) burns.

43. The doctor who treated Roniah noted that the "precipitating cause" of her injuries was "contact burns from the hot pavement."

44. To allow her wounds to heal, Roniah was required to undergo "medical debridement" – a procedure in which medical personnel physically scrub and scrape dead skin off of a wound to reveal the raw tissue underneath.

45. Even with the quality medical care that she received at Valley Health, Roniah was left with permanent scars, covering her arms and shoulder as well as emotional injuries that she is still working to heal.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983—Excessive Force in Violation of the Fourth Amendment**
**(Against Defendants Rios, Crawford, and Bryce)**

46. Plaintiff incorporates by reference all allegations asserted in the paragraphs above as though they were fully set forth herein.

47. 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

48. Roniah Trotter is a citizen of the United States, and Defendants Chelsey Rios, Reginald Crawford, and Brendon Bryce are "person[s]" for the purposes of 42 U.S.C. § 1983.

49. Defendants Chelsey Rios, Reginald Crawford, and Brendon Bryce were, at all times relevant hereto, acting under the color of law, in their capacities as a City of Phoenix police officers.

50. At the time of the above-mentioned, complained-of events, the Fourth Amendment to the United States Constitution clearly established Ms. Trotter's right to be secure in her person from unreasonable seizure through excessive force.

51. Defendants Rios, Crawford, and Bryce violated these rights when they held Ms. Trotter down on hot concrete that caused her to sustain second-degree burns around her arms, shoulder, and extremities.

52. Defendants Rios, Crawford, and Bryce engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Ms. Trotter's federally protected constitutional rights.

53. The acts and omissions of Defendants Rio, Crawford, and Bryce as described herein intentionally deprived Ms. Trotter of her constitutional and statutory rights and caused her other damages.

54. Defendants Rios, Crawford, and Bryce are not entitled to qualified immunity for the complained-of unconstitutional and illegal conduct.

55. As a proximate result of Defendants Rios', Crawford's, and Bryce's unlawful conduct, Ms. Trotter suffered actual injuries and other damages and losses as described herein, entitling her to damages in amounts to be determined at trial.

56. Ms. Trotter is further entitled to attorneys' fees and costs under 42 U.S.C. § 1988, pre-judgment interest and costs allowable by federal law.

57. In addition to compensatory, economic, consequential, and special damages, Ms. Trotter is entitled to punitive damages against Defendants Rios, Crawford, and Bryce under 42 U.S.C. § 1983, in that the actions of these Defendants were taken maliciously, willfully, or with reckless or wanton disregard of Ms. Trotter's constitutional rights.

///

## SECOND CLAIM FOR RELIEF
### Municipal Liability Under *Monell*
### (Against the City of Phoenix Only)

58. Plaintiff incorporates by reference all allegations asserted in the paragraphs above as though they were fully set forth herein.

59. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected by the Constitution.

60. Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to a plaintiff's constitutional rights.

61. At all times relevant hereto, Defendant City of Phoenix had a constitutional duty to properly train, supervise, and discipline their employees and agents.

62. Defendant City of Phoenix breached that duty by, among other things, failing to maintain a policy prohibiting officers from pressing a suspect against hot surfaces capable of causing partial thickness burns.

63. The policy, pattern or practice, or custom of condoned misconduct, is tacitly or overtly sanctioned, as evidenced by the conduct of the defendants, and the City of Phoenix's failure to train, supervise, investigate, and discipline any of the defendants involved in this incident, which amounted to a deliberate indifference to Plaintiff's constitutional rights.

64. This unconstitutional behavior was carried out pursuant to a policy, pattern or practice, or custom, whether formal or informal, which violates the constitutional rights of the Plaintiff and others in Plaintiff's situation.

65. The condoning of the misconduct, and failure to end these policies, patterns, practices, or customs, was a direct and proximate cause of injuries suffered by Plaintiff.

## THIRD CLAIM FOR RELIEF
### Assault and Battery—Vicarious Liability
### (Against the City of Phoenix Only)

66. Plaintiff hereby incorporates all allegations contained in the foregoing paragraphs as if they were full set forth herein.

67. As set forth herein, Defendants Rios, Crawford, and Bryce caused harmful and/or offensive contact with Ms. Trotter by, among other things, violently tackling her and pressing her against dangerously hot concrete until she sustained second-degree burns over her arms, shoulder, and extremities.

68. As a direct and proximate cause of these Officers' harmful and offensive contact, Ms. Trotter was injured and suffered damages in an amount to be proven at trial.

69. As set forth herein, these Officers were acting within the course and scope of their employment with the City of Phoenix: they were City of Phoenix employees, performing acts they were authorized to perform; they were on-duty, working in their regular job capacities as police officers; and their actions were motivated, at least in part, by a purpose to serve the City of Phoenix.

70. Because these Officers were acting within the course and scope of their employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by these employees' tortious conduct.

## FOURTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress – Vicarious Liability
### (Against Defendant City of Phoenix only)

71. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

72. The above-described actions of Defendants Rios, Crawford, and Bryce – pressing Ms. Trotter against hot concrete until the skin melted from her body and she believed she was being burned alive – were extreme and outrageous.

73. An average member of the community would regard the conduct referenced in the foregoing paragraph as atrocious, intolerable in a civilized community, and beyond all possible bounds of human decency.

74. The above-described conduct of these Officers was intentional insofar as they intended to cause Ms. Trotter emotional distress.

75. The above-described conduct of these Officers was reckless because they were aware of and consciously disregarded the near certainty that it would cause Ms. Trotter emotional distress.

76. The above-described conduct of these Officers caused Ms. Trotter to suffer severe emotional distress, requiring hospitalization.

77. As a direct and proximate result of the actions of these Officers, Ms. Trotter was injured and suffered damages in an amount to be proven at trial.

78. As set forth herein, these Officers were acting within the course and scope of their employment with the City of Phoenix: they were City of Phoenix employees, performing acts they were authorized to perform; they were on-duty, working in their regular job capacities as police officers; and their actions were motivated, at least in part, by a purpose to serve the City of Phoenix.

79. Because these Officers were acting within the course and scope of their employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by these employees' tortious conduct.

### FIFTH CLAIM FOR RELIEF
#### Negligence
#### (Against City of Phoenix only)

80. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

81. All employees of Defendant City of Phoenix, including and not limited to all police officers named in this complaint, owed Ms. Trotter a duty of reasonable care.

Namely, to act as reasonable police officers under the circumstances.

82. These City employees breached their respective duties of reasonable care to Ms. Trotter when, among other things, they caused Ms. Trotter to suffer second-degree burns by pressing her against hot concrete.

83. Reasonable employees of a city or municipality in the respective positions of these City employees would not have undertaken these acts and omissions.

84. As a direct and proximate result of the City of Phoenix's acts and omissions, Ms. Trotter was injured and suffered damages in an amount to be proven at trial.

85. As set forth herein, these currently unknown employees were acting within the course and scope of their employment for the City of Phoenix during the sum of their involvement in this matter. They were performing acts they were authorized to perform; were on-duty, working in their regular job capacity; and their actions were motivated, at least in part, by a purpose to serve the City of Phoenix.

86. Because these currently unknown employees were acting within the course and scope of their employment for the City of Phoenix, Defendant City of Phoenix is vicariously liable for the damages caused by these employees' tortious conduct.

87. In addition to its vicarious liability, the City of Phoenix is also directly liable for negligence insofar as it failed to act reasonably in training their officers not to hold individuals on concrete or asphalt so hot that it causes immediate and serious burn injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Roniah Trotter hereby requests that the Court enter judgment against Defendants and issue an award in Plaintiff's favor as follows:

    a. For damages in an amount to compensate Ms. Trotter fairly and fully for the numerous violations of her Constitutional Rights;

    b. For general, consequential, special, and compensatory damages, including but not limited to Ms. Trotter's pain and suffering, mental anguish, emotional

suffering, and loss of enjoyment of life, arising both out the violations of both her constitutional rights and the officers' tortious conduct;

c. For nominal damages as provided for by law;

d. For punitive damages as provided for by law;

e. For prejudgment interest on all liquidated sums;

f. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by Arizona law;

g. For Ms. Trotter's costs and other expenses incurred in this action; and

h. Such other and further relief as the Court deems just.

DATED this 31st day of August, 2020.

>THE PEOPLE'S LAW FIRM, PLC
>645 North 4th Avenue, Suite A
>Phoenix, AZ 85003
>
>
>By: /s/ Stephen D. Benedetto
>    Stephen Benedetto
>    Heather Hamel
>
>    *Attorneys for Plaintiff Roniah Trotter*